At this time, would Counsel for the Appellant please introduce himself on the record to begin? Good morning, Your Honors. Jeremy Friedman, Attorney for the Appellant. With me at counsel's table is Louise Herman. I'd like to reserve two minutes for rebuttal. You may. Thank you. May it please the Court. In this appeal, we're seeking a review of Chief Judge Saylor's fee determination in this case. Time permitting, I'd like to address the second question first. If the Court wants me to direct specific questions to the first one, I'd like to get to it. In the second question presented, we're asking for review of the District Court's decision to dramatically reduce the fees on fees litigation, the fees for the fees litigation. Judge Saylor reduced the number of hours that both Ms. Herman and I, myself, expended in the fees litigation dramatically. He imposed categorical exclusions. He wouldn't allow any time for conference between counsel on the matter. He wouldn't allow any time for Ms. Herman to respond to the attacks on her time expenditures that was raised by my brother over there. He dramatically reduced the attorney's fee rate, the hourly rate, to $300 an hour, which was at the 2017 rate. He then applied a 1.29 enhancement based on the inflation rather than using current rates. Can I ask you this question, which is just a basic question, but what is your position on what the reasonable factors the Court can rely on in reducing the attorney's fee rate? And then, can we infer those findings or does the District Court have to be explicit in those findings? Is that a question directed to the rate, Your Honor? Yes. Yes. The rate is supposed to be based upon a factual determination. No, it's a question about the reduction. The reduction of the rate was, he didn't explain directly what his statement was, but his entire approach to the fees on fees was that he felt if he awarded fees at the rate that we had claimed, it would only encourage people to litigate fees, which is contrary to the Commission v. Chief. I thought it was based in part on experience. Sorry? I thought it was based in part on an assessment of the experience of the attorney. Yes. Isn't that a valid criterion for setting the rate? The, it's not a valid basis for reducing just the rates used for the fees litigation. As the Commission v. Gene, the Supreme Court case says that you should include, you should consider the fees litigation as part of an inclusive whole of the case and not itemize and make a reduction based upon what stage of the litigation you're in. Plus, in the Perdue case. I'm sorry. Is that an attack on the decision to limit you to the fees incurred and exclude fees after the government settled the case? Your holistic approach seems to be an argument that Judge Saylor committed error by focusing on the fees up to the date of the settlement and not being so willing to give you fees after that date. He was willing to give fees, but he did it at a dramatically reduced rate, and the . . . This is because you're, for purposes of the argument, you're skipping that first argument, which is about the double discounting. Judge Lynch is now asking you about double discounting. I'm sorry. Because you raised the issue of whether the right way to think about it is a whole litigation, which tracks, to some extent, your argument in the first argument about double discounting. We didn't challenge the rate determination for Ms. Herman in the merits litigation, although we do think it was incorrect, but we're not raising that. But you're just saying, as a matter of law, if you're experienced in the litigation and inexperienced as to fees, you get the rate for the litigation, not the lower rate for being inexperienced as to fees, as to the fees part of the litigation. You get the same rate throughout the entire case, but the amount of hours that you spend might be more or less, depending upon your experience. And what is your best authority for the notion that, as to the fees litigation, the rate is the rate that you would be entitled to for the merits litigation, even though you're inexperienced as to fees litigation? The best argument on that, the best authority on that, is the Jones case from the D.C. Circuit in 2015. And that case relies directly upon the Purdue case. It's not uncommon that sometimes you'd hire a separate lawyer for the fees litigation? Yes. And in that case, if the separate lawyer you hired was inexperienced in fees litigation, they nonetheless would get the rate of the experienced attorney during the merits litigation? Yes, Your Honor. The rate is your rate. And if you think that you're spending too much time or too little... Well, my rate as a fees attorney, let's say, is $300. But fortunately, the person who hired me to do the fees litigation charges $1,000 for the merits. Do I then get $1,000 for the fees litigation? If the market rate is that your rate is $1,000, it's based upon your ability to handle... No, my rate is, for fees, $300. Okay. And now I've been brought in to do the fees litigation. The lawyer who brought me in charges $1,000 for the merits litigation. Do I now get $1,000 for the fees litigation? Yes, Your Honor. You get the same rate. However, if you spend too much time on it, then it's evaluated. But if you reduce both the number of hours and the rate, that's double counting, which is exactly what the Perdue case forbids and what the Jones case says shouldn't be applied in this context. Okay. You're saying, just as a matter of law, you can't reduce both fees and hours. Yes, Your Honor. You can't reduce both fees and hours. And also, if you're going to address your efficiency in terms of being able to conduct the work, that's addressed only in the rate, not the hours. So that it would be improper to impose a different rate based upon the amount of time that you would expect to perform that work. If you were $1,000 an hour and you hired a fees counsel that was only $300 an hour, that would be extremely efficient. The time that you spend as the attorney bringing in the fees counsel is going to be lessened because you're bringing in an attorney, in this case myself, who has the skills and experience to present the fees litigation in an efficient manner. Unless I hire an inexperienced person to do that. I suppose theoretically there might be an issue. But in this case, Ms. Herman and I both started law practice in the same time. We both have the same experience. With respect to fees litigation? Well, I happen to have more, substantially more experience in fees litigation. That was, I thought, the basis for the district court reducing the rate as the fees or is that only, am I missing something? The district court did not, he reduced both of our rates. Both of our rates were reduced. Hers you can see directly because he allowed $500 an hour for the merits fees and he cut it down to $300 for the fees litigation. My rate at the time was $750. I billed out at $800 an hour, but he awarded me only $300 an hour. But he did that in two parts. He reduced the $750 to $550 saying, I've looked at Boston area cases and the $550 is more like the going rate in Boston. He then looked at your records and he noted a lack of attention to detail meaningful errors. And resulting lack of reliability and then he used that to reduce from $550 to $300. As I understand the law, both of those types of reductions are well within the district court's discretion. Our review is for abuse of discretion. You keep pushing us toward an argument that these are errors of law, but the Eighth Circuit and the H.J. case, there are a number of First Circuit decisions doing both of these types of reductions. So how can it be an error of law? It is an abuse of discretion in addition to an error of law. But the abuse of discretion is we're asking the court to review the determination here. And I think the problem that Judge Saylor had with respect to the rates that you're asking about is that he sort of saw it as sort of a legal precedent. Like if you could look at how other courts decided what fees were awarded in other cases. And he didn't base it upon the actual factual record. A substantial factual record was put in and it's before the court. There were declarations by three experienced key TAM attorneys as well as myself. I'm sorry, but his opinion reflects that he did read all of those materials because it references those materials. He did not determine, at least from what we can tell from the record, he based it upon a reported decision in another jurisdiction where a judge found in a low market rate that my rate in another case. And even in that case, the court had awarded me a higher rate than he had awarded. He then deducted it for my... Didn't he also rely on one Massachusetts case, Mayar, that was at 450 and then he still set the rate at 550 before reducing because of the typographical errors? The issue isn't about... The abuse of discretion we're asking for, and it also relates to a legal error, is to think about fees as being based upon some sort of precedent, the rates as being on precedent. These are factual determinations. Okay. And one last question from me on the double discounting. Yes, Your Honor. I take it the argument is there's just no basis in what was presented to the judge for thinking that there was a distinction being drawn in the discounting that the attorney had made between pre-April 9th and after April 9th. Now, the district court, as I read it, when it first looked at the materials, says, you know, you're not explaining dates or anything, it's unclear to me what's going on, issues its ruling. On the motion for reconsideration, you make clear there's no basis for saying April 9th. But at that stage, you're on a motion for reconsideration, you're not at the initial motion for the fees. I didn't see anything in the motion for reconsideration explaining to the district court why there was not greater clarity in the initial fee petition or why there couldn't have been greater clarity because it just was as clear as it possibly could be. So could you address those two objections to your argument insofar as it's depending on saying that there was a mistake even as to the motion for reconsideration denial? Yes, Your Honor. It is as clear as it can be. The motion for summary judgment wasn't even brought until August 22nd. And the date, the time frame that he shifted the time period from was October 25th back to August 9th. And the time records that... April 9th or August 9th? Sorry? August 9th or April 9th? August 9th. August 9th. Did I say? I said April. You know it better than I do. Okay. And the time records that the judge looked at in order to calculate the 12.8 hours to add back in show dramatically, clearly, that all of the time on the summary judgment motion was all but two hours, was spent on... Was spent after the August 9th date. And the other issue that was raised is that Ms. had nobody... The other side did not challenge the date and did not ask for that reduction. So Ms. Herman, pursuant to this court's guidance, has exercised billing judgment. And in her declaration, she goes in chronological order. And you can see in the chronological order that she's making her reductions, that the summary judgment reductions came at the very end. If I'm following, there's just nothing in the initial fee petition that could possibly have suggested that the discounting was based on a pre-settlement, post-settlement distinction. That's your basic argument. And not only that, but the actual date of settlement wasn't until October 25th. She had not signed off on any agreement that had covered conduct, which covered conduct release, which is absolutely necessary. And another issue that I didn't raise as much in the briefing is that it wasn't until there was a signature that there was an actual entitlement to attorney's fees. So you couldn't go on that. But we're not challenging his bringing it back to the August date. We're simply asking the court to review the double discount. Any further questions? No, thank you. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce himself on the record to  Good morning, Your Honor. May it please the Court. I'm Robert Shaw for the Appellee, the Whittier Health Network, Inc. Judge Saylor did not abuse his discretion by refusing to award fees for the time between Whittier's August 9th, 2016 settlement in principle and the October 25th, 2016 formalization.  Let's say that's true. But the question is on to the discounting. What indicated that the discounting was being done not as to the total time, which is the phrase that's used in the petition, but as to only the time pre-August, post-August, only a portion of that time. What is there in the fee petition? In their fee petition, they don't address the August settlement at all. Correct. They say, I'm reducing it for the total time spent. You've got it exactly. What would then lead the judge to say, oh, I see. You must be discounting it only for all the discounts occurred during this period of time. Why would that be? It wasn't clear in their fee petition. What's not clear? If I say I'm reducing it for my total time spent. Yes. Where do we get the idea that you must be saying then only for the time that occurred during a period of that time? They made their fee petition. They said we've discounted for a variety of different reasons. For the total time. For the total amount.  Total time. Yes. They've reduced the number of hours. Isn't the total time from beginning to end? That's correct. Yeah. They say we've- Is the idea that he read total time to mean all the time up until the settlement or after the settlement? I just don't understand where he gets the distinction he's drawing. So the distinction he's drawing is he's saying they weren't working on the case against my client after the case was settled. So we're going to eliminate those hours except for the 12 hours that were spent formalizing the settlement agreement. And we're discounting those. Their position is that Judge Saylor should have recognized, even though it wasn't addressed in their briefing, that some of those hours they had already voluntarily discounted. And so in our opposition to the fee petition, we said, hey, they're trying to charge us for all of these hours they spent litigating against somebody else after the case was settled vis-a-vis us. That was our principal argument. We called it the most egregious aspect of their fee petition. Judge Saylor agreed. Okay. They filed a reply brief, which calls that argument, our principal argument, nonsensical. But it doesn't say, oh, one effect of cutting fees off in August would be a double counting because we've already discounted some of those. They don't respond with that argument. They just say it's nonsense and they move on. So Judge Saylor says, okay, I have an argument here that says fees should be cut off in August. It has not been rebutted. They have not explained to me that they've already discounted some of these hours. It is, and it's clearly time that they should not be compensated for. So I'm going to deduct those hours. Then on a motion for reconsideration, they say, oh, some of those hours we had already deducted. Just so I understand, as you read Judge Saylor's first opinion, even if they had, if it's evident on the record that some of the hours were spent in this period that he says you can't get compensated for. So it's just clear as day that some of the summary judgment work was for that period of time. He just says, I'm never going to give you money for that, even though he knows at that time they've already discounted some of those hours, or does he not know at that time? He does not know at that time. Okay. So now he knows. Yeah. So now, and in the reply brief, they do say they've discounted. No, but they don't say they've discounted based on the date of the settlement. They don't address the date of the settlement at all. I understand that, but they're saying they've discounted some of the summary judgment time. They did say that. Well, they said, but they didn't use it as an argument against the idea that. No, but I'm saying if it's clear as day. If it were. Yes. If it were as clear as day that the summary judgment time extended beyond that August 9th time, then once the judge is apprised in the reply brief that I've discounted some of the summary judgment time, what would be the basis for thinking, oh, well, all that discounting had to occur as to hours that were, I don't know, was it pre or, pre and August 9th? I mean, if it had been clear as day, then that would be a different case. What makes it not clear as day? Okay. What makes it not clear as day is they put a laundry list together of the things they're discounting and they're saying we're discounting this, that, and the other thing. The total time spent on summary judgment. They discounted half the time. Right. But they said as to the total, they did a discounting as to the total, as to the total time. Isn't that the phrase used? Yeah, but they didn't make it clear that, they didn't even make it clear to Judge Saylor that summary judgment is occurring after August. In the filings they made, there's billing instances of summary judgment after that time. Is the idea he doesn't have to look at that? The idea is he doesn't, under a burden to hunt through the record to figure out where there's an inconsistency. They didn't make the argument, that's the problem, Your Honor. Where is the basis for the assumption that the discounting that they're referring to in the reply brief had to be discounting during the period of time that Judge Saylor treats it as being in the motion for reconsideration? I guess that's my question. The basis for that assumption is that when confronted with this, our principal argument, that the time should be cut off in August, they do not come back and say, hey, if you cut the time off in August, you have to realize that some of that time we've already discounted. They don't make that argument. And you don't read the reply brief as just necessarily making that argument? It absolutely, Your Honor, does not make that argument. The only time they address our date argument is in one paragraph, buried in the middle, and they just call it nonsense. At no point in their reply brief do they deal with the temporal issue. They don't come forward and say, they just say they're entitled to the fees after this August date. They don't say, oh, part of the reason why you shouldn't deduct those fees is some of them have already been deducted. They just say, give us what we've asked for after that date. So if they wanted to preserve the idea and draw the court's attention, they had to make it clear to the judge, and they didn't. And then they raised it for the first time in a motion to alter or amend the judgment, at which point it should be raised. With regard to the second issue, Your Honor, I think their position, you know, Judge Saylor said, hey, we don't want the fees litigation to turn into a second major litigation. And he did acknowledge that in a number of cases, the fees on fees litigation is a relatively short proceeding and a short process. But that wasn't why he discounted the hours spent by Mr. Friedman. He explained clearly that he is discounting for time spent addressing inadequate billing records, client conferences between counsel, block build entries, hours unsubstantiated by billing records. So I mean, the argument they're making is that he somehow discounted because he didn't like fees on fees litigation, but that's not at all what he did in this instance. Also on the $300 an hour, as Judge Lynch pointed out on the appellant's argument, he reached the $300 rate after looking at the local market, the lack of complexity of the fees on fees work, and the quality of the services. I'm a little bit confused by what you just said there, because I sort of saw it as Mr. Friedman's rate was $750. Judge Saylor reduced that to $550 because of the market rate, right? He compared each other. Correct. And he said, okay, $550. Then he further reduced it. That's right. What's your position on the further reduction? I think it's for errors he spots, right? That's correct, Your Honor. Is that because of those errors the level of lawyering wasn't the same as other similar situated expert lawyers? What's the rationale for that further reduction? He says the quality of the work presented, the quality of the petition. And these two issues are sort of related to each other, too. Had the quality of the lawyering been better, it would have made clear to Judge Saylor that this temporal issue had bearing on what the fee award should be, but they didn't make that clear at all in their papers to him. Judge Saylor, in theory, could have looked and seen that they're talking about summary judgment, and then he could have cross-referenced that with the mountain of billing records produced and determined that some of the summary judgment—remember, he didn't preside over this case. He had no personal knowledge of it—and then cross-referenced it and found that some of the summary judgment proceedings happened after the case was settled vis-a-vis my client. That is theoretically possible, but you're asking an awful lot of a district court judge trying to deal with a fee petition to require them to delve that deep into the record, and it should have just made clear to him that that was the consequence of doing it. And so I'm not disparaging my brother here, but it reflects on his decision to award the rate of $300, that there was math errors and other problems with the petition itself. I see that I'm out of time. If you have no further questions, we'll rest on our briefs. Thank you, Your Honors. Please reintroduce yourself on the record to begin. You have a two-minute rebuttal. Jeremy Friedman, Your Honors. It's not true that we did not raise the discount of the time period. As we pointed out in the reply brief on page 4, footnote 1, there were many instances in which we cited in the briefing how she had made the reduction. Did you make a double-discounting argument in the reply? No, at the reply brief— So what's your answer? That's the force of the argument that you need to confront. It's not that you couldn't theoretically have drawn from the facts contained in the reply brief a argument that, oh, I see, then there would be double-discounting. The point they're making is you never said to the district court at that time, oh, now I see what's going on. You can't do this because that would be double-discounting. That simply wasn't said until the motion for reconsideration. We did say that it would be—we didn't use the word double-discounting because there was no argument that the date of settlement should have been removed. Right, but the question is whether that was a strategic mistake of sorts because the district court, as I understand your opponent's contention, the district court simply said, well, the reply brief is not responsive to the argument that I'm confronting, which is that you shouldn't get money for anything after that date. So simply saying some of our work was for after that date, if the district court thinks you're just wrong, you shouldn't get anything, that's not a response to that. If instead you were saying, look, you still can't reduce it even if you think we're wrong about that because there would be double-discounting, that argument was simply not made in the reply. The argument that my brother makes is based upon an incorrect statement that he had made an argument that the settlement date should be moved back to August 9th. Instead what he argued is that the amount of time spent on summary judgment should be reduced by 100 percent. But even still, regardless, the point is if that argument is being challenged, it could be challenged on its merits, that's a bad idea, that's not a good reason to move the date, blah, blah, blah. But there could be a fallback argument, which is, and if you don't agree with us, you still can't do this because then it would be double-discounting. You were perfectly positioned to make that argument at that time and you didn't. We did make the argument that we've already reduced those hours by 50 percent and that therefore there was already about 150 hours struck. There was no argument made, sorry, there was no argument made that we should move it back to that date. In fact, we couldn't figure out how it was calculated until we got the decision on the – may I make one final point? On the second issue, it was the defendant's position to fight every cent, to make the relator's counsel fight for every cent. And that's in the documentation in the record. And if you just – I won't read the whole thing because I've run out of time. But if you could look at the end of the argument before Judge Woodlock, who heard this entire dispute on page – at the appendix, page 692, he said, if it comes to this, if you're going to make them litigate those fees on fees, then they're entitled to the amount of fees that it takes to get that deal done. And it was that sentiment that is actually more consistent with the Hensley case, the Jean case, and the Purdue case, that the way to discourage fees litigation is to have a set objective standards so that the parties can try to settle. And that's what we wanted to do. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.